UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH

In re:

COMMERCIAL REAL ESTATE          Case No. 13-23261-PGH
INVESTMENT GROUP, CORP.

                               Chapter 11

      Debtor.

_____/

## UNOPPOSED MOTION TO DISMISS CASE

COMES NOW, PNC Bank, National Association ("PNC"), by and through its undersigned counsel, and pursuant to 11 U.S.C. §1112, hereby submits this Unopposed Motion to Dismiss Case, and states in support thereof that the Debtor and PNC have entered into a Stipulation Agreement to resolve their disputes which provides for dismissal of the instant bankruptcy case, a copy of which is attached hereto as Exhibit A, and which agreement was confirmed by both parties' counsel in open court on August 6, 2013.

WHEREFORE, PNC prays for dismissal of the above-referenced bankruptcy case, and for such other and further relief as this Court deems just and appropriate.

Dated this 8th day of November, 2013.

/s/ Michael A. Nardella
Denise D. Dell-Powell, Esq.
Florida Bar No. 0890472
Michael A. Nardella, Esq.
Florida Bar No. 51265
Burr & Forman LLP
200 S. Orange Avenue, Suite 800
Orlando, Florida 32801
Telephone: (407) 540-6600
Facsimile:  (407) 650-2777
E-Mail: denise.dellpowell@burr.com
E-Mail: mnardella@burr.com
Counsel for PNC Bank, National Association

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing was served by transmission of Notices of Electronic Filing generated by CM/ECF on November 8, 2013, to: Brad Culverhouse on behalf of Debtor Commercial Real Estate Investment Group, Corp., bradculverhouselaw@gmail.com, and Office of the US Trustee, USTPRegion21.MM.ECF@usdoj.gov; and by U.S. mail on November 8, 2013 to all non-registered users on the Court's mailing matrix attached hereto.

*/s/ Michael A. Nardella*
Michael A. Nardella, Esq.

Label Matrix for local noticing
113C-9
Case 13-23261-PGH
Southern District of Florida
West Palm Beach
Fri Nov  8 15:04:01 EST 2013

Commercial Real Estate Investment Group, Cor
4801 Linton Blvd.,
Suite 11A  No. 643
Delray Beach, FL 33445-6503

PNC Bank, National Association
c/o Denise D. Dell-Powell, Esq.
Burr & Forman LLP
200 S. Orange Ave.
#800
Orlando, FL 32801-6404

Donato Walter Casale
3900 NW 29th Road
Boca Raton FL 33431

Hon Eric Holder
Attorney General of the United States
Department of Justice Room 4400
950 Pennsylvania Ave NW
Washington DC 20530-0001

Hon Wifredo A Ferrer
US Attorney  So District of Florida
Attention CIVIL PROCESS CLERK
99 NE  4th Street
Miami FL 33132-2131

(p)INTERNAL REVENUE SERVICE
CENTRALIZED INSOLVENCY OPERATIONS
PO BOX 7346
PHILADELPHIA PA 19101-7346

Office of the US Trustee
51 S.W. 1st Ave.
Suite 1204
Miami, FL 33130-1614

PNC BANK NA
201 E Pine Road #200
Attn Wendy Nelson
Orlando FL 32801-2715

PNC Bank National Association
222 Deleware Ave
Attn James E Rohr Chr and CEO
Wilmington DE 19801-1637

Palm Beach County Tax Collector
PO Box 3353
West Palm Beach FL 33402-3353

State of Florida Department of Revenue
Attn Executive Director
PO Box 6668
Tallahassee FL 32314-6668

State of Florida Dept of Revenue
Bankruptcy Section
POB 6668
Tallahassee FL 32314-6668

TRITON STONE OF FORT MYERS LLC
3531 Metro Pkwy
Attn Josh Kessler MGRM
Fort Myers FL 33916-7524

Brad Culverhouse
320 S Indian River Dr  # 100
Ft Pierce, FL 34950-1501

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Internal Revenue Service
COMPLIANCE SERVICES INSOLVENCY
STOP 5730
7850 SW 6th Court
Fort Lauderdale FL 33318

(d)Internal Revenue Service
P O Box 21126
Philadelphia PA 19114

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)West Palm Beach

End of Label Matrix
Mailable recipients     14
Bypassed recipients      1
Total                   15



## STIPULATION AGREEMENT

This Stipulation Agreement (the "Agreement") is entered into this _____ day of August, 2013, by and between CASALE MARBLE IMPORTS, INC. ("Casale Marble"), COMMERCIAL REAL ESTATE INVESTMENT GROUP, CORP. ("CREIG"), METRO & SIVAN, LLC ("Metro"), DONATO WALTER CASALE ("D. Casale"), SYLVANA CASALE ("S. Casale"), and PNC BANK, N.A. ("PNC") (collectively, the "Parties").

## RECITALS

WHEREAS, PNC made loans to Casale Marble, loans to Metro, and one loan to CREIG (the "Loans");

WHEREAS, the Loans were all guaranteed by D. Casale, and the Loans to Casale Marble were guaranteed by CREIG, but S. Casale did not execute any guaranty of the Loans;

WHEREAS, the loans to Casale Marble were secured by all of Casale Marble's assets including without limitation all equipment, inventory, accounts, and general intangibles (the "Casale Marble Collateral"); the loans to Metro were secured by certain real property located in Lee County, Florida, which is currently leased to Triton Stone of Ft. Myers, LLC, together with all rents and other personalty (the "Metro Collateral"); the loan to CREIG was secured by certain real property owned by CREIG and located in Palm Beach County, Florida, and which is currently storing Casale Marble Collateral, together with all rents and other personalty of CREIG (the "CREIG Collateral"); the loan to CREIG was further secured by certain real property owned by D. Casale and S. Casale and located in Palm Beach County, Florida, which is currently the residence of D. Casale and S. Casale (the "Tennis Property"); and the loan to CREIG was further secured by certain real property owned by D. Casale and located in Palm Beach County, Florida, and which is currently the residence of the mother of D. Casale (the "La Casa Property");

WHEREAS, the Loans were further secured by that certain Cross Default and Cross Collateralization Agreement (the "Cross Collateralization Agreement"), pursuant to which a default under any of the above-described Loans constitutes a default under each, and the Casale Marble Collateral, the Metro Collateral, the CREIG Collateral, the Tennis Property, and the La Casa Property all serve as collateral for each of the Loans (collectively, the "PNC Collateral");

WHEREAS, Casale Marble, CREIG, and Metro each missed their respective monthly payments due for March, 2012, and each payment due thereafter;

WHEREAS, on May 10, 2013, PNC filed a lawsuit in the District Court for the Southern District of Florida, Case No. 9:13-cv-80482-KAM, against Casale Marble, Metro, CREIG, D. Casale, and S. Casale (collectively, the "Casale Parties"), among other defendants, for breach of notes, breach of guaranties, foreclosure of the PNC Collateral, and the appointment of a receiver over the PNC Collateral (the "District Court Action"), except that as to S. Casale, the lawsuit in the District Court Action did not seek *in personam* relief but only *in rem* relief to foreclose out the Tennis Property;

2188513 v4

WHEREAS, on May 13, 2013, PNC filed in the District Court Action a Verified Motion for an Appointment of a Receiver (Dkt. No. 5)(the "Receiver Motion") seeking the appointment of Thomas J. Beane as receiver over all of the PNC Collateral;

WHEREAS, on May 14, 2013, Casale Marble filed a voluntary petition for chapter 11 of Title 11 of the United States Code, Case No. 13-21220-PGH (the "Casale Marble Bankruptcy"); on June 3, 2013, D. Casale filed a voluntary petition for chapter 11 of Title 11 of the United States Code, Case No. 13-23240-PGH (the "D. Casale Bankruptcy"); on June 4, 2013, CREIG filed a voluntary petition for chapter 11 of Title 11 of the United States Code, Case No. 13-23261-PGH (the "CREIG Bankruptcy"); on June 4, 2013, Metro filed a voluntary petition for chapter 11 of Title 11 of the United States Code, Case No. 13-23262-PGH (the "Metro Bankruptcy");

WHEREAS, on May 22, 2013, PNC filed in the Casale Marble Bankruptcy a Motion to Convert or Dismiss (Dkt. No. 31)(the "Motion to Convert");

WHEREAS, on July 8, 2013, the Bankruptcy Court entered an Order dismissing the D. Casale Bankruptcy (Dkt. No. 31), which Order came up for reconsideration on August 20, 2013 and at that hearing the court reinstated the D. Casale case subject to certain conditions, including D. Casale's agreement to give PNC relief from the automatic stay;

WHEREAS, on August 6, 2013, the Bankruptcy Court heard and granted the Motion to Convert in the Casale Marble Bankruptcy, ordering that the Casale Marble Bankruptcy be converted to chapter 7 of Title 11 of the United States Code, and that a chapter 7 trustee be appointed to immediately liquidate Casale Marble (the "Conversion Ruling");

WHEREAS, the Casale Parties believe that conversion of the Casale Marble Bankruptcy under the Conversion Ruling would result in an immediate, forced liquidation sale of the Casale Marble Collateral, and that instead, a receiver should be appointed over the PNC Collateral, who could choose to operate Casale Marble temporarily, conduct an orderly liquidation, and would recover a higher value from the sale of the Casale Marble Collateral, possibly as a going concern, and may choose to continue to employ any employee of Casale Marble;

WHEREAS, after the Bankruptcy Court issued its Conversion Ruling in the Casale Marble Bankruptcy, a meeting was held between PNC and its counsel and D. Casale and S. Casale in their personal capacities and in their official capacities as owners, officers, and/or directors of Casale Marble, CREIG, and Metro, together with their individual and corporate counsels, at which meeting the Casale Parties requested that, in exchange for PNC requesting the Bankruptcy Court not convert the Casale Marble Bankruptcy, but instead to have it dismissed, and in exchange for PNC allowing continued use of cash collateral pending appointment of a receiver, the Casale Parties would enter into the terms of this Agreement;

WHEREAS, PNC requested that if it were to agree to dismissal of the Casale Marble Bankruptcy in lieu of conversion, PNC would require the immediate appointment of a Receiver over the PNC Collateral and that the Receiver would have complete authority, discretion, and the

2

right to retain or request any services, employment, or counsel of any employee of Casale Marble as he or she sees fit in the furtherance of the disposition of the PNC Collateral and would have the right to liquidate the PNC Collateral; and

WHEREAS, after the above-mentioned meeting, the Parties returned to the Bankruptcy Court and the Parties announced the terms of this Agreement in open court, which terms the Bankruptcy Court adopted and approved, and thereafter PNC made an *ore tenus* agreed motion for relief from stay, which motion the court granted taking into account the consent of the Casale Parties.

NOW, THEREFORE, in consideration of the mutual promises and covenants set forth herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1.  Recitals. The recitals set forth above are incorporated herein and made part of this agreement by this reference.

2.  Defined Terms. Any defined terms used but not defined in this Agreement shall have the meaning ascribed to said term in the loan documents between the parties, including those documents attached to the Verified Complaint in the District Court Action (the "Loan Documents").

3.  Immediate Relief from Stay. Casale Marble consents to immediate entry of an order granting PNC's *ore tenus* motion for relief from stay, with a waiver of the 14-day waiting period, such that PNC is immediately entitled to take any action against the Casale Marble Collateral.

4.  Waiver of Automatic Stay. D. Casale, upon reinstatement of the D. Casale Bankruptcy, consented at the hearing before the bankruptcy court on August 20, 2013 to the immediate entry of an order granting PNC relief from stay, and D. Casale hereby agrees to a waiver of the 14-day period, such that PNC is immediately entitled to take any action against the Tennis Property and the La Casa Property, or any other property constituting PNC Collateral. D. Casale will take no actions in the D. Casale Bankruptcy, should it be reinstated, which would interfere, hinder, or delay in any way the foreclosure of, or the appointment of a Receiver over, any of the PNC Collateral, including any plan or reorganization which would seek to retain any of the PNC Collateral without PNC's express, written consent.

5.  Dismissal of the Casale Marble Bankruptcy. Casale Marble consents to entry of an order dismissing the Casale Marble Bankruptcy at any time requested by PNC, but no later than the hearing scheduled for September 24, 2013, unless PNC requests an extension of the time.

6.  Dismissal of the Metro Bankruptcy and the CREIG Bankruptcy. Metro and CREIG consent to entry of orders dismissing the Metro Bankruptcy and CREIG Bankruptcy, respectively, upon the motion(s) of PNC as to same.

2188513v4

3

7.   Conversion of Casale Marble to Chapter 7. PNC agrees not to seek conversion of the Casale Marble Bankruptcy to chapter 7 of Title 11 of the United States Code, except as otherwise provided herein.

8.   Cash Collateral. PNC consents to the use of its cash collateral (including inventory) by Casale Marble under the same terms, conditions, restrictions, adequate protection, and other required payments included in the Bankruptcy Court's Second Order Authorizing Use of Cash Collateral and Granting Adequate Protection (Dkt. No. 92) in the Casale Marble Bankruptcy until dismissal of the Casale Marble Bankruptcy.

9.   Appointment of a Receiver. The Casale Parties hereby consent to the entry of an Order granting the Receiver Motion which appoints Thomas J. Beane, or such other person as PNC recommends or the Court appoints, as receiver of the PNC Collateral (the "Receiver"). The Casale Parties agree that the Order appointing the Receiver shall provide for the Receiver to have complete control over the PNC Collateral and over the Casale Marble, CREIG, and Metro businesses and that the Receiver shall have, without limitation, all the powers delineated and requested in the Receiver Motion and any other powers, including the right to sell the PNC Collateral upon PNC's consent, and complete authority, discretion, and the right to retain or request any services, employment, or counsel of any employee of Casale Marble as he or she sees fit in the furtherance of the disposition of the PNC Collateral. The Casale Parties agree to execute a Joint Stipulation for Appointment of a Receiver in the form attached hereto as Exhibit "A" which PNC may immediately file in the District Court Action, attached to which as Exhibit "1" is a proposed Order Appointing Receiver, to which the Casale Parties hereby consent.

10.   Final Judgment of Foreclosure. The Parties consent and stipulate to the entry of a final judgment of foreclosure to transfer title to the PNC Collateral, and any other property subject to the lien of PNC, and the Parties hereby waive any and all defenses they may have as of the date of this Agreement pursuant to paragraph 12 infra, and covenant not to bring any such defenses or counterclaims to contest the District Court Action, or any subsequent foreclosure action, in any way. Unless there are other, third-party defendants contesting the District Court Action, final judgment of foreclosure may be entered as soon as possible under the law and the sale of the PNC Collateral scheduled at any time after entry of final judgment.

11.   Cooperation and Non-Interference; Notices of Sale. The Casale Parties shall turnover the PNC Collateral to the Receiver together with all non-confidential information requested by the Receiver and all relevant books and records, as further delineated in the Order appointing the Receiver. The Casale Parties shall not interfere with the Receiver's operation of the PNC Collateral. The Casale Parties hereby waive any and all notice requirements as may be required under the law related to the Receiver's decision to sell any of the PNC Collateral.

12.   No Defenses or Claims in District Court Action; General Release of PNC. The Casale Parties represent, warrant, and agree that as of the date of this Agreement, PNC has taken no action, and has not failed to take any action, which action or inaction would give rise to a claim by the Casale Parties, or by any other person acting by or through the Casale Parties, against PNC in connection in any way with the Loans, this Agreement or any other Loan Document, nor would any action taken or contemplated by this Agreement give rise to any such claim. The Casale Parties acknowledge and agree that they do

4

not have any defenses, counterclaims, offsets, cross-claims, claims, and/or demands of any kind or nature, known or unknown, knowable or unknowable, existing as of the date of this Agreement, including, without limitation, any usury or lender liability claims or defenses, or any claims related to the Cross Collateralization Agreement, whether known or unknown and whenever and howsoever arising, relating to the Loans, or relating to any past relationship, transaction, or occurrence between or involving the Casale Parties and PNC (collectively, the "Claims"), arising out of any of the Loans or the Loan Documents, or any past relationship, transaction, or occurrence between or involving the Casale Parties and PNC, its agents or assigns, that can be asserted either to reduce or eliminate all or any part of their liabilities for the Loans, or to seek affirmative relief or damages of any kind or nature from PNC, its agents or assigns. The Casale Parties further acknowledge that to the extent that any such Claims should in fact exist, including, without limitation, any usury or lender liability claim, they are hereby fully, finally, and irrevocably released, waived, and discharged.

13.    This Agreement Not to Supersede Loan Documents. This Agreement does not supersede the Loan Documents. The Loan Documents shall continue to govern the Loans until such time as PNC and the Casale Parties agree (if at all) to enter into other documents governing such debt. This Agreement does not waive, alter, or modify PNC's rights under the Loan Documents or otherwise waive or excuse any defaults thereunder, except as provided for herein.

14.    Remedy Upon Default; PNC's Right to Conversion. If any of the Parties, independently or concertedly, fail(s) to comply with any terms set forth in this Agreement, any non-defaulting Party shall have the right to enforce the terms of this Agreement. If any of the Casale Parties, independently or concertedly, fail(s) to comply with any terms set forth in this Agreement, including cooperation with the appointment of the Receiver and/or interference with the enforcement of this Agreement on account of the D. Casale Bankruptcy, PNC shall also have the right to enforce any and all rights, remedies, and recourse as provided in the Loan Documents, and this Agreement, and shall have the right to submit an *ex parte* Order to the Bankruptcy Court in the Casale Marble Bankruptcy converting the case to Chapter 7 of Title 11 of the United States Code and the Casale Marble Parties consent to the entry of such Order.

15.    Special Provisions As to S. Casale. PNC acknowledges that S. Casale did not execute any guaranty or promissory note related to the Loans or any other Loan Document except the mortgage relating to the Tennis Property and that S. Casale is a party to this Agreement solely because of her interest in the Tennis Property. By executing this Agreement, S. Casale is in no way assuming, acknowledging, or adopting any of the monetary obligations of the Loans as personal obligations.

16.    Additional Actions. The Parties agree to take such additional actions, including the execution and delivery of additional documents reasonably necessary to effectuate the provisions of this Agreement and the provision and furnishing of information to PNC regarding any aspects of the PNC Collateral or the financial condition of Casale Marble, CREIG, and/or Metro.

17.    Agreement Fully Read and Understood. This Agreement has been carefully read and the contents hereof are known and understood by the Parties. The Parties have each received independent legal advice from the attorneys of their choice with respect to the preparation,

218853 v4

5

review, and advisability of executing this Agreement. Prior to the execution of this Agreement, the Parties had the opportunity for their respective attorney to review the Agreement, and the Parties acknowledged that they have executed this Agreement after independent investigation and without fraud, duress, or undue influence.

18.    Applicable Law.  The existence, validity, construction and operation of this Agreement, and all of its covenants, agreements, representations, warranties, terms, and conditions, shall be determined in accordance with the laws of the State of Florida. Any dispute pertaining to this Agreement or the documents executed in connection herewith shall be brought in the District Court in and for the Southern District of Florida.

19.    Entire Agreement.  This Agreement and all documents executed in connection herewith sets forth the entire Agreement between the parties and fully supersedes any and all prior and/or contemporaneous agreements or understandings between the Parties that pertain to the subject matter hereof. The terms of this Agreement may not be contradicted by evidence of any prior or contemporaneous agreement, and no extrinsic evidence whatsoever may be introduced to various terms in any judicial proceeding involving this Agreement.

20.    Modification.  This Agreement may be modified, but only if the modification is in writing and signed by the Parties to this Agreement.

21.    Severability.  Should any provision of this Agreement be declared or determined by any court to be illegal or invalid, the validity of the remaining parts, terms, or provisions shall not be affected thereby, and said illegal or invalid part, term, or provision shall be deemed not to be part of this Agreement.

22.    Counterparts.  This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same document. Faxed signatures may be accepted as originals.

23.    Mutual Drafting.  This Agreement is the product of negotiations "at arms length" between the Parties, all of whom are represented by counsel. As such, the terms of this Agreement are mutually agreed upon, and no part of this Agreement will be construed against the drafter.

24.    WAIVER OF TRIAL BY JURY.  The Parties hereby knowingly, voluntarily and intentionally waive the right they may have to a trial by jury in respect to any litigation based hereon, or arising out of, under or in connection with this Agreement, any document contemplated to be executed, or any underlying matter, course of dealing, statement (whether verbal or written) or action of the Parties.

*SIGNATURE BLOCKS FOLLOW ON NEXT PAGE*

Z1SIN13 v4

6

BURR & FORMAN LLP

_[signature]_

Denise D. Dell Power, Esquire
Florida Bar No. 890472
cgolden@burr.com
Michael A. Nardella, Esquire
Florida Bar No. 51265
mnardella@burr.com
200 South Orange Avenue, Suite 800
Orlando, Florida 32801
Telephone:    (407) 540-6600
Facsimile:    (407) 540-6601

Counsel for PNC Bank, N.A.

Dated: _Aug 22_, 2013

LAW OFFICES OF BRETT A. ELAM,
P.A.

_____

Brett A. Elam, Esquire
Florida Bar No. 576808
belam@brettelam.com
105 S. Narcissus Avenue, Suite 802
West Palm Beach, Florida 33401
Telephone:    (561) 833-1113
Facsimile:    (561) 833-1115

Counsel for Casale Marble Imports, Inc., and
Donato Walter Casale

Dated: _____, 2013

BRAD CULVERHOUSE, ATTORNEY AT
LAW, CHARTERED

_[signature]_

Brad Culverhouse, Esquire
Florida Bar No. 207632
bradculverhouselaw@gmail.com
320 S. Indian River Dr., Suite 100
Ft. Pierce, Florida 34950
Telephone:    (772) 465-7572
_as per bankruptcy court's_
_oral order_

_As_ Counsel    for    Commercial    Real    Estate
Investment Group, LLC and Metro & Sivan,
LLC, _chapter 11 Debtors in possession_
_and Not as a party or_
Dated: _8/27_, 2013 _as a guarantor_

2188513 v1

7

BURR & FORMAN LLP

_____

Denise D. Dell Power, Esquire
Florida Bar No. 890472
egolden@burr.com
Michael A. Nardella, Esquire
Florida Bar No. 51265
mnardella@burr.com
200 South Orange Avenue, Suite 800
Orlando, Florida 32801
Telephone:    (407) 540-6600
Facsimile:    (407) 540-6601

Counsel for PNC Bank, N.A.

Dated: _Sept 22_, 2013


BRAD CULVERHOUSE, ATTORNEY AT
LAW, CHARTERED


_____

Brad Culverhouse, Esquire
Florida Bar No. 207632
bradculverhouselaw@gmail.com
320 S. Indian River Dr., Suite 100
Ft. Pierce, Florida 34950
Telephone:    (772) 465-7572


Counsel   for   Commercial   Real   Estate
Investment Group, LLC, and Metro & Sivan,
LLC

Dated: _____, 2013


LAW OFFICES OF BRETT A. ELAM,
P.A.

_____

Brett A. Elam, Esquire
Florida Bar No. 576808
belam@brettelam.com
105 S. Narcissus Avenue, Suite 802
West Palm Beach, Florida 33401
Telephone:    (561) 833-1113
Facsimile:    (561) 833-1115

Counsel for Casale Marble Imports, Inc., and
Donato Walter Casale

Dated: _August 26_, 2013

2168513 v1

PNC BANK, N.A.

By: _Wendy M. Nelson_
Wendy Nelson

Its: _Vice President_

Dated: _August 22_, 2013


CASALE MARBLE IMPORTS, INC., as
chapter 11 debtor-in-possession, Case No.
13-21220-PGH

By: _[signature]_
Donato Walter Casale

Its: _President_

Dated: _Aug 26_, 2013


COMMERCIAL REAL ESTATE
INVESTMENT GROUP, LLC, as chapter
11 debtor-in-possession, Case No. 13-23261-
PGH

By: _[signature]_
Donato Walter Casale

Its: _Manager_

Dated: _Aug 26_, 2013

OBLIGOR/MORTGAGOR

_[signature]_
Donato Walter Casale

Dated: _Aug 26_, 2013


METRO & SIVAN, LLC, as chapter 11
debtor-in-possession, Case No. 13-23262-
PGH

By: _[signature]_
Donato Walter Casale

Its: _President_

Dated: _Aug 26_, 2013

MORTGAGOR

_[signature]_
Sylvana Casale

Dated: _August 26_, 2013

2188513 v1

8